# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHERIE DENISE GROVES** | * |
| | * |
| v. | *   Civil No. JKS 13-083 |
| | * |
| **CAROLYN W. COLVIN** | * |
| **Acting Commissioner of Social Security** | * |
| | * |

## MEMORANDUM OPINION

Plaintiff Cherie Denise Groves brought this action pursuant to 42 U.S.C. § 405(g) for review of the Social Security Administration's (SSA) final decision denying her claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. §§ 401 *et. seq.* (the Act). Both parties' motions for summary judgment are ready for resolution, *see* ECF Nos. 14 and 19, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Groves' motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

## 1. Background.

Groves filed an application for DIB on May 8, 2009, R. 44, and supplemental security income (SSI) on May 13, 2010,[1] R. 75-79, with an initial disability onset date of November 1, 1999, R. 75, which was later amended to February 17, 2010. R. 33. Her DIB claim was denied initially on December 18, 2009, R. 341, and upon reconsideration on May 4, 2010. R. 347. Groves then filed a written request for a hearing before an Administrative Law Judge (ALJ), and a hearing was held on January 26, 2012. R. 12. ALJ Eugene Bond issued a decision on February 22, 2012, finding that Groves was not disabled under the Act because she retained the residual functional capacity (RFC) to perform jobs available in significant numbers in the

---

[1] Groves withdrew her application for SSI when she amended her alleged onset date to February 17, 2010, a date later than her date last insured of December 31, 2001. R. 20.

national economy. R. 19. The Appeals Council subsequently denied Groves's request for review on November 9, 2012, R. 5-8, and the ALJ's decision became the final, reviewable decision of the agency.

## 2. **ALJ's Decision.**

The ALJ evaluated Groves' disability claim using the five-step sequential process described in 20 C.F.R. § 404.1520. At step one, the ALJ found that Groves had not engaged in any substantial gainful activity since the alleged onset date of February 17, 2010. R. 14. At step two, the ALJ found that Groves had the following severe medical impairments: depression, anxiety, cervical and lumbar degeneration, hip osteoarthritis, fibromyalgia, rheumatoid arthritis, and diabetes mellitus. *Id.* At step three, the ALJ found that Groves did not suffer from an impairment, or combination of impairments, listed in 20 C.F.R Part 404, Subpart P, Appendix 1. R. 15. At step four, the ALJ reviewed the record and determined that Groves possessed the RFC to perform sedentary, unskilled work, with the option to alternate between sitting and standing at will, and limited dominant-hand usage. R. 16. At step five, given Groves' age, high school education, work experience, and RFC, the ALJ considered the testimony of the vocational expert (VE) and concluded that Groves is eligible for work that exists in significant numbers in the national economy. *Id.* Accordingly, the ALJ found that Groves was not disabled as defined under the Act and denied her application for benefits.

## 3. **Standard of Review.**

The role of this court on review is to determine if the ALJ applied the correct legal standards in finding Groves not disabled, and if substantial evidence supports that conclusion. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotation marks omitted).  To be substantial, there must be more than a scintilla, but less than a preponderance, of the evidence presented.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  This court may not try the case *de novo*, and will affirm a decision if it is supported by substantial evidence. *Id.*  If conflicting evidence could cause reasonable minds to differ on whether or not the claimant is disabled, it is the ALJ's right and responsibility to make that determination.  *Craig v. Chater*, 76 F.3d, 589 (4th Cir. 1996) (citing *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987)).

**4. <u>Discussion.</u>**

Groves argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Szkotnicki,[2] because he assigned "little weight" to the opinions without fully considering the factors set out in 20 C.F.R. 404.1527(d).[3]  ECF No. 14 at 14; R. 18.  However, "[a] formulaic recitation of the factors is not required so long as it is apparent that the ALJ was aware of and considered each one." *Carter v. Astrue*, No. CBD 11-2980, 2013 U.S. Dist. LEXIS 116856, *26 (D. Md. Aug. 19, 2013) (citation omitted).  Here, while it is true that the ALJ did not explicitly enumerate the relevant factors in assigning Dr. Szkotnicki's opinions "little

---

[2] The Commissioner argues that the ALJ "was being more than generous," ECF No. 19 at 15, in labeling Dr. Szkotnicki as Groves' treating physician because all of the treatment notes from Dr. Szkotnicki's office are filled out and signed by the certified nurse practitioner, Naomi Constantine. *See* R. 298-332.  Groves contends that, "[c]onsistent with the current practice in many medical facilities," Ms. Constantine was supervised by and collaborated with Dr. Szkotnicki in completing her evaluations of Groves.  ECF No. 20 at 2.  According to the regulations, a treating physician is a physician who has had an ongoing treatment relationship with the patient, 20 C.F.R. § 404.1502, and has the best ability to provide a detailed, longitudinal picture of the patient's medical impairments.  20 C.F.R. § 404.1527.  The Commissioner is correct that Dr. Szkotnicki did not conduct any of Groves' evaluations, and thus, does not fit the definition of a treating physician; his opinions—to the extent these opinions can be attributed to him—should not be entitled to the deference normally associated with treating source opinions.  This is especially true because both of the medical assessments attributed to Dr. Szkotnicki were dated January 18, 2012, which lends more support to the notion that he did not engage in an ongoing treatment relationship with Groves.  (To clarify, even though Ms. Constantine conducted all of the evaluations and filled out all of the forms within Dr. Szkotnicki's office, Dr. Szkotnicki's name appears below Ms. Constantine's name at R. 328-332, thus the ALJ attributed the documents found at R. 298-327 solely to Ms. Constantine and the documents found at R. 328-332 solely to Dr. Szkotnicki.)  Regardless, the analysis of this issue would not be different even if Dr. Szkotnicki strictly qualified as a treating physician.  The court will adopt the terminology used by the ALJ and refer to Dr. Szkotnicki as the treating physician.

[3] The ALJ must consider the following factors if he finds that the treating physician's opinion is not entitled to controlling weight: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with relevant medical evidence; (4) its consistency with the record as a whole; (5) whether it is the opinion of a specialist regarding his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2)-(6).

3

weight," the ALJ correctly noted that Dr. Szkotnicki's opinions, R. 328-332, did not rely on, or otherwise reference, any objective medical evidence. R. 18. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Regardless, Groves has failed to explain how she was prejudiced by the ALJ's analysis. Any error in failing to explicitly address the § 404.1527 factors was harmless. *York v. Astrue*, Civ. No. TMD 11-902, 2013 U.S. Dist. LEXIS 71960, *9-12 (D. Md. May 20, 2013) ("While the ALJ could have been more specific in his findings, the Court finds that his overall discussion in his opinion supports his findings."); *Morgan v. Barnhart*, 142 Fed. Appx. 716, 722-23 (4th Cir. 2005) ("Even assuming, however, that this opinion is a medical opinion due special weight under the treating-physician rule, any error in failing to credit this opinion was harmless.").

Groves also asserts that the ALJ provided "no discussion of any specific evidence that is inconsistent with Dr. Szkotnicki's opinions." ECF No. 14 at 14-16. She also references an MRI showing a congenital blocked vertebrae at C2-3, R. 115, and her own subjective complaints of back pain on an RFC questionnaire, R. 330, but fails to cite an assessment from Dr. Szkotnicki that analyzes or interprets this evidence. The ALJ stated that he was rejecting Dr. Szkotnicki's opinions because they were unsupported by either objective evidence or treatment notes. (R. 18). This is an adequate basis for the rejection. In addition, the ALJ specifically incorporated this MRI and Groves' testimony in fashioning the RFC, *see* R. 17 and 115.

Groves next argues that "the ALJ inaccurately and selectively described consultative examiner Dr. Merrion's assessment" with regard to her depression and anxiety. ECF No. 14 at 16. Dr. Merrion, a licensed psychologist, examined Groves on September 8, 2010. R. 220-28. Dr. Merrion found that there could be interruptions in Groves' work day "due to mood swings

4

and/or anxiety," but that Groves was "a fair candidate for interacting with the public or co-workers" and that she had only "a mildly to moderately impaired ability to deal with the normal stressors and demands encountered in competitive employment." R. 225. Here, again, Groves fails to explain what part of Dr. Merrion's assessment the ALJ improperly analyzed. The ALJ noted the severity of Groves' depression and anxiety and appropriately limited Groves to sedentary, unskilled work to account for these impairments. *Hill v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 159, 160 (4th Cir. 2004) ("[A]lthough [plaintiff] clearly suffers from back and lung problems, as well as anxiety, substantial evidence supports a finding that these deficiencies do not significantly limit Hill's ability to work a light to sedentary unskilled job."); *Seifert v. Comm'r, SSA*, Civ. No. SAG 11-1051, 2013 U.S. Dist. LEXIS 63784, at *3 (D. Md. May 2, 2013) (concluding that the ALJ appropriately determined that plaintiff's mild to moderate mental limitations related to her depression warranted a restriction to sedentary, unskilled work). Groves does not suggest how the ALJ should have fashioned the RFC any differently on account of her depression and anxiety.

Groves also argues that the ALJ failed to specifically identify the limitations associated with her limited dominant-hand usage. ECF No. 14 at 18. The ALJ noted that "in July 2008, an examination showed stiffness and tenderness in the claimant's hands and she was diagnosed with carpal tunnel syndrome." R. 17, 152. The ALJ also noted that, in August 2010, Dr. Rashid Khan stated that there were no signs of acute or chronic inflammation in her upper extremities, her grip strength was normal, her muscle strength was a 5/5 and her range of motion was within functional limits. R. 216. The ALJ weighed this conflicting evidence and decided to limit Groves' dominant-hand usage. Groves indicates that the ALJ should have given more weight to the opinion of Ms. Constantine, a certified nurse practitioner working under Dr. Szkotnicki, who

5

determined that Groves could not use her hands for simple grasping, pushing or pulling of controls, or fine manipulation, R. 332, but this lone notation by Ms. Constantine is not supported by any objective medical evidence in the record.

Groves also argues that a detailed, and potentially more restrictive, description of Groves' dominant-hand limitation is necessary because two of the three jobs provided by the VE require frequent reaching and handling and occasional fingering. ECF No. 14 at 18. However, as discussed above, the extreme limitations related to Groves' hand usage are not supported by objective medical evidence. In addition, one of the occupations named by the VE, unarmed security worker, requires no reaching, handling or fingering and there are 37,000 of these positions nationally and 860 positions locally. R. 39. This pool of positions is more than adequate to support the ALJ's conclusion that there are jobs that exist in significant numbers in the national and local economies that Groves can perform. R. 19; *see Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) ("Claimant contends that the light and sedentary jobs described by the vocational expert that of hand packager, auto cleaner, and cloth folder do not exist in significant numbers within the region. We do not think that the approximately 110 jobs testified to by the vocational expert constitute an insignificant number.").

Next, Groves argues that the ALJ failed to adequately justify why he found her to be not credible. ECF No. 14 at 19. "Conflicts in the evidence and credibility determinations are within the discretion of the ALJ, and we may not substitute our judgment for that of the ALJ." *Landry v. United States Dep't of Health & Human Servs.*, No. 92-1889, 1993 U.S. App. LEXIS 6724, at *10 (4th Cir. Mar. 26, 1993). Here, the ALJ noted that, according to Groves, her impairments caused her to experience difficulty concentrating, racing thoughts, memory problems, isolation, inability to be in crowds, leg and back spasms, cramps, pain, and a need for a cane to walk. R.

17. The ALJ concluded that the intensity of Groves' symptoms was inconsistent with her ability to prepare meals, cook a roast, dust, load the dishwasher, occasionally drive a car, shop online, and pay bills. R. 17. The ALJ stated that Groves' ability to execute these chores indicates an ability to perform work-related functions. *Id.* This finding was not erroneous. *See Owens v. Comm'r of Soc. Sec.*, Civ. No. 11-267, 2011 U.S. Dist. LEXIS 154068, at *24-25 (S.D. Ohio Dec. 6, 2011) (affirming an ALJ's decision to devalue a plaintiff's subjective complaints of pain in light of plaintiff's ability to cook simple meals, wash dishes, grocery shop for himself, fold laundry and place it in and take it out of the machine, make his bed, clean his room, dust, and watch his friends' children including feeding and dressing them).

The ALJ also doubted Groves' credibility because Dr. Carol Paris indicated that Groves was non-compliant with certain medications, thus increasing the likelihood that her symptoms were not as limiting as she alleged. R. 17, 203. As a defense, Groves points to a medical record submitted by her therapist, Patricia Murphy, which indicates that she avoids taking pills due to a fear of addiction because her mother, father and brother are addicts. ECF No. 14 at 19; R. 210. However, on that same report, Ms. Murphy specifically noted that Groves was not an addict and used percocet and methadone as prescribed. R. 210. Regardless, Groves' fear of addiction does not justify her selective refusal to take certain medications as prescribed. The ALJ acted within his discretion in partially discrediting Groves' testimony regarding the severity of her symptoms because of her non-compliance taking certain medications. *See McCartney v. Apfel*, 28 Fed. Appx. 277, 280 (4th Cir. 2002) ("[Plaintiff's] symptoms are not credible because he refused to increase the dosage of his medication."); *Sturtevant v. Comm'r*, Civ. No. SAG-11-2145, 2013 U.S. Dist. LEXIS 3991, at *4-5 (D. Md. Jan. 10, 2013) ("[D]espite allegations of disabling back pain, [Plaintiff] was only taking low dose medications on a sporadic basis," thus the ALJ acted

7

within his discretion in determining that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.").

Next, Groves asserts that the ALJ must not have based the RFC on medical evidence because "the DDS consultant made no findings as to Ms. Groves' functional limitations and the ALJ rejected Dr. Szkotnicki's opinion." ECF No. 14 at 20. "In making an RFC finding, the ALJ is under an obligation to 'include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence.'" *Lehman v. Astrue*, 931 F. Supp. 2d 682, 695 (D. Md. 2013) (quoting SSR 96–8p). Here, the ALJ found that Groves had the RFC to perform sedentary, unskilled work, with the option to alternate between sitting and standing, with limited dominant-hand usage. R. 16. The ALJ based Groves' RFC on a myriad of treatment notes, radiology reports, medical source opinions and testimony from Groves herself. R. 15-18. The ALJ relied on treatment notes from Shah Associates in concluding that Groves had a history of back, neck, and hip pain, which was addressed with Percocet and methadone. R. 17, 188. The ALJ also placed weight on two MRIs taken in April 2009 that showed multilevel degenerative disc disease in Groves' lumbar spine and disc bulges in her cervical spine. R. 17, 115, 116. Because of this evidence, the ALJ fashioned an RFC that limited Groves to sedentary, unskilled work. Her sit/stand option is appropriate because she reported that she could walk and stand for 15 minutes and sit for 30 minutes at a time. R. 298. Ms. Constantine confirmed that Groves could sit continuously for 30 minutes and for four hours during and 8-hour workday and could stand for 15 minutes and for four hours during an 8-hour workday. R. 331-32. The ALJ also limited Groves' dominant-hand usage after she repeatedly reported numbness and pain in that hand. R. 284, 286, 288. Substantial evidence supports the

ALJ's RFC determination.

Finally, Groves argues that the testimony of the VE confirms that she cannot maintain regular employment due to her mental and physical impairments. ECF No. 14 at 20. "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citation and quotation marks omitted). Thus, in order for a vocational expert's opinion to be relevant or helpful, "it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *Id.* "[T]he ALJ is afforded great latitude in posing hypothetical questions . . . and need only pose those that are based on substantial evidence and accurately reflect the plaintiff's limitations." *Id.* (citation and quotations marks omitted). "Therefore, based on his or her evaluation of the evidence, an ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a claimant's counsel, even though these considerations are more restrictive than those suggested by the ALJ." *Id.* Here, the VE testified that a person with a marked limitation in her ability to maintain attention and concentration, who would miss at least three days of work per month, and who would need eight 10 minute breaks per day would not be employable. R. 40-41. Groves, without citing to any evidence in the record, argues that the facts included in this hypothetical question are supported by records from Drs. Szkotnicki, Paris and Merrion. But, as explained earlier, the ALJ appropriately omitted various extreme limitations, which were not supported by objective medical evidence, when fashioning the RFC. The ALJ appropriately relied on the VE's testimony that a significant number of sedentary, unskilled jobs, with a sit/stand option and a limited dominant-hand usage, exist in the national and local economies to conclude that Groves was not disabled within the meaning of the Act.

**5. Conclusion.**

Substantial evidence supports the ALJ's conclusion that Groves was not disabled under the Act. Groves' motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.


Date:  March 6, 2014                                                         /S/
                                                                       JILLYN K. SCHULZE
                                                                       United States Magistrate Judge